UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GARY FREEDLINE,

        Plaintiff,

    v.

O ORGANICS LLC et al.,

        Defendants.

Case No. 19-cv-01945-JD

**ORDER RE MOTION TO DISMISS**

Re: Dkt. No. 18

In this putative consumer class action, plaintiff Gary Freedline alleges that defendants O Organics LLC and its parent company, Lucerne Foods, Inc. (together "O Organics"), misled consumers about the alcohol and sugar content in their kombucha beverage products. Dkt. No. 1. O Organics asks to dismiss the complaint under Rule 12(b)(6) and Rule 9(b). Dkt. No. 18. The motion is granted and denied in part.

## BACKGROUND

As alleged in the complaint, O Organics is a national manufacturer and distributor of organic kombucha drinks. Dkt. No. 1 ¶ 6. Kombucha is made out of tea that is fermented by bacteria and yeasts. These microorganisms metabolize sugars, acids and caffeine in the tea, and convert them to carbon dioxide and alcohol. *Id*. ¶ 13. The drinks are often flavored with fruits and herbs, *see id*. ¶ 5, in an apparent effort to make palatable what is essentially a bottle of vinegar.

Kombucha has the cachet of being healthful. But producers have struggled with controlling the alcohol created by fermentation. Natural fermentation can yield up to 4% alcohol by volume ("ABV"). *Id*. ¶ 14. This is an issue because products with more than 0.5% ABV are considered to be alcoholic beverages that are subject to federal regulation, including disclosure and labeling laws. *Id*. ¶¶ 21-27.

In 2010, large retailers like Whole Foods took kombucha off their shelves for a time after discovering that they contained up to 2.5% ABV. *Id*. ¶ 15. Some producers, such as Honest Tea,

abandoned kombucha production altogether because they could not ensure that their beverages were below the 0.5% ABV limit. *Id*. ¶ 16. Other producers pasteurized the kombucha to kill the microorganisms and stop fermentation. *Id*. ¶ 17.

Federal agencies like the Food and Drug Administration, and the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), launched investigations into the alcohol content of kombucha. *Id*. ¶ 15. They found that "many" kombucha drinks in the market were above the ABV threshold and subject to regulation. *Id*. ¶ 21. The agencies also expressed concern that producers were not adequately disclosing alcohol content to consumers. *Id*.

O Organics supplies raw and unpasteurized kombucha. *Id*. ¶ 17. An independent lab is said to have tested O Organics' bottles and determined that its kombucha contained between 1.63% and 2.63% ABV. *Id*. ¶ 19. None of the tested products was below the 0.5% ABV limit. *Id*. O Organics does not identify its kombucha as an alcoholic beverage, and states on labels that they contain less than 0.5% ABV. *Id*. ¶¶ 17-18.

Freedline is a California resident who purchased kombucha made by O Organics at his local supermarket on multiple occasions over the last few years. He bought them "on the basis that the products were non-alcoholic." *Id*. ¶ 5. He also says that he was misled by the sugar content in the kombucha. *Id*.

Freedline alleges several California state consumer law claims against O Organics for violations of: (1) the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq.*; (2) the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) the False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500 *et seq.*; (4) breach of express warranty; (5) breach of the implied warranty of merchantability; (6) negligent misrepresentation; (7) fraud; and (8) unjust enrichment. *Id*. ¶¶ 43-103. He sues on behalf of "all persons in the United States who purchased O Organics Kombucha beverages" and a subclass of purchasers in California. *Id.* ¶¶ 32-33.

O Organics has moved to dismiss the complaint under Rule 12(b)(6) and Rule 9(b), and to strike the nationwide class allegations. Dkt. No. 18. The Court took oral argument on the motions. Dkt. No. 23.

**LEGAL STANDARDS**

The standards governing O Organics' motion to dismiss are well-established. *See McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 2688781, at *1 (N.D. Cal. June 5, 2018). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that rule, and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This calls for "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility analysis is "context-specific" and not only invites but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard applies to claims that sound in fraud, even if not formally denominated as such. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

"The touchstone of Rule 9(b) is notice." *McLellan*, 2018 WL 2688781, at *1. "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Id.* (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)). Generally, allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Vess*, 317 F.3d at 1106). Conclusory allegations will not suffice, but Rule 9(b) "does not require absolute particularity or a recital of the evidence." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal quotation omitted). A "complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

**DISCUSSION**

O Organics raises a variety of objections to the complaint in a laundry list fashion, without providing the benefit of substantial discussion or analysis. They can be resolved in equally short order. The parties' familiarity with the arguments in the briefs is assumed.

O Organics does not specifically challenge the adequacy of the UCL, FAL or CLRA claims. Rather, it criticizes the complaint as a whole as "long on rhetoric, but short on facts." Dkt. No. 18 at 4. That is certainly not true for the alcohol content allegations. The complaint offers a wealth of specific factual allegations about the ABV issue. The sugar content allegations, on the other hand, are threadbare. The complaint mentions the "undeclared sugar content" of O Organics' products in only a few places, and in a glancing way that lacks factual support. *See, e.g.*, Dkt. No. 1 ¶ 2. The complaint does not provide enough facts to state a plausible claim against O Organics with respect to the sugar content of its products. Freedline will be allowed to amend the complaint on this issue.

The alcohol claims that sound in fraud meet the requirements of Rule 9(b). O Organics says that Freedline does not allege "specific facts about the test, who bought the products, whether there were multiple tests, whether multiple products were tested, which products were tested, where the products were purchased, or when the products were purchased." Dkt. No. 18 at 10. That again is not a fair reading of the complaint, which contains everything that O Organics is entitled to demand, including a plausible allegation of reasonable reliance. *See, e.g.*, Dkt. No. 1 ¶¶ 3, 5, 19. To the extent it seeks more, it asks for too much under Rule 9(b). *See United Healthcare*, 848 F.3d at 1180.

Overall, the complaint amply provides O Organics with "'notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1039 (N.D. Cal. 2019) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). That is all Rule 9(b) requires. *Id.* (citing *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 990 (9th Cir. 2008)).

O Organics says that Freedline lacks "standing" to sue because he did not adequately allege "causation." Dkt. No. 18 at 6-7. O Organics means by this that Freedline did not "show that the kombucha products *he purchased* were mislabeled." *Id.* at 7 (emphasis in original).

It is not at all clear how this point raises a question of standing, and O Organics does not offer any case law that might shed light on its theory. In any event, it appears to be based on a misreading of the complaint. Among other allegations, the complaint specifically states that Freedline bought O Organics kombucha that were not labeled as alcoholic beverages, or otherwise disclosed their alcohol content. Dkt. No. 1 ¶ 5. It also specifically states that Freedline bought the products in reliance on the representation that they were not alcohol beverages. *Id.* ¶¶ 3, 5.

O Organics' primary jurisdiction challenge is also unpersuasive. Primary jurisdiction is a "prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than by the courts." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). The doctrine serves to avoid potentially conflicting decisions or undue encroachment when judicial and agency authority overlap. *Id.*; *see also United States v. W. Pac. R.R. Co.,* 352 U.S. 59, 63-64 (1956). The "particular agency deferred to must be one that Congress has vested with the authority to regulate an industry or activity such that it would be inconsistent with the statutory scheme to deny the agency's power to resolve the issues in question." *United States v. Gen. Dynamics Corp.,* 828 F.2d 1356, 1363 (9th Cir. 1987). Application of the doctrine is confined to a "limited set of circumstances" that require "resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (internal quotation omitted).

The doctrine is entrusted to the sound discretion of the Court, guided by consideration of factors such as: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781; *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015).

1    O Organics has not demonstrated a good reason to dismiss or stay this case on primary jurisdiction grounds. O Organics says, again in cursory form, that Congress is considering legislation that might address alcohol levels in kombucha. Dkt. No. 18 at 11. But O Organics provides no indication of when that legislation might be passed, if ever, or how it might affect this litigation, if at all. That is far too insubstantial to warrant dismissal of the case, or staying it sine die while Congress deliberates. *See Reid v. Johnson & Johnson,* 780 F.3d 952, 967-68 (9th Cir. 2015) (undue delay weighs against application of doctrine). In addition, the Court's "task is to rule on what the law is, not what it might eventually be." *Garcia v. Texas,* 564 U.S. 940, 941 (2011).

    O Organics says that the FDA and TTB are the agencies with "expertise on alcohol testing methodologies and specifically the issues involving kombucha." Dkt. No. 18 at 11. What this might mean substantively for the case is left unsaid, nor does O Organics explain how the consumer claims here involve the type of novel, complicated, or technical issues that might warrant deference to the agencies' expertise, in any capacity. To the contrary, the product misrepresentation claims at the heart of this lawsuit are routinely handled by the courts, and are comfortably within the judicial domain.

    O Organics challenges the warranty claims for lack of pre-suit notice. *See Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135 (Ct. App. 2008) (quoting Cal. Com. Code § 2607(3)(A)). But Freedline sent a pre-suit demand letter for the CLRA claims, which effectively apprised O Organics of the grounds for the warranty claims. Dkt. No. 1 ¶ 55; Dkt. No. 20-1. That is sufficient notice. *See McLellan*, 2018 WL 2688781, at *3.

    The warranty claims are plausibly alleged in all other respects. For express warranty, Freedline adequately alleges that he relied on the labels of the O Organics products, and that the warranty of being a non-alcoholic beverage was breached. *See Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (Ct. App. 1986).

    So too for the implied warranty of merchantability, which arises when goods do not "conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f); *see also Milan v. Clif Bar & Co.*, No. 18-CV-02354-JD, 2019 WL 3934918, at

*3 (N.D. Cal. Aug. 20, 2019). As the preceding discussion shows, the complaint alleges more than enough on this score for the alcohol claims.

For the unjust enrichment challenge, California treats unjust enrichment as a remedy and not an independent claim. *See In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015). It is dismissed as a claim, but remains available as a remedy should Freedline establish and prove it up later in the case.

As a final issue, O Organics asks to strike the allegation of a national class. In essence, it objects to Freedline's ability to represent consumers outside of California, his home state, either by applying California law nationwide, or under the laws of other states. These are legitimate and important issues that the Court has written about extensively in other decisions. *See, e.g.*, *Razuki v. Nationstar Mortg. LLC*, No. 18-CV-03343-JD, 2020 WL 1478374, at *2-3 (N.D. Cal. Mar. 26, 2020) (and cases therein). It is not inappropriate to take them up at this stage of the case, *id*., as Freedline suggests.

The class arguments in the briefs presently before the Court are not well developed. Both sides would benefit from the opportunity for more extensive briefing on these issues. Because Freedline will be allowed to amend the sugar content allegations, O Organics may submit additional, and ideally much more developed, arguments on the national class in its response to the amended complaint. If Freedline does not amend, O Organics may file a supplemental motion only on the national class, not to exceed 10 pages of argument.

**CONCLUSION**

The unjust enrichment claim is dismissed with prejudice. The claims and allegations with respect to sugar content are dismissed with leave to amend. Freedline may file an amended complaint that is consistent with this order by April 30, 2020. If the current public health situation

makes this deadline unrealistic, the parties may agree on a new date by joint stipulation filed with the Court. If the parties cannot agree, a party may ask the Court to extend the deadline.

**IT IS SO ORDERED.**

Dated: March 31, 2020

JAMES DONATO
United States District Judge